IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICIA ROSATI             :         CIVIL ACTION
                                 :
     v.                    :
                                 :
SGT. MICHAEL COLELLO, et al.    :         NO. 14-2402

MEMORANDUM

Dalzell, J.                                          April 2, 2015

## I.    Introduction

We consider here the defendants' motion for summary judgment. Plaintiff Patricia Rosati brings her claims under Title VII, 42 U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations Act, 42 P.S. §§ 951-963 ("PHRA"), alleging employment discrimination on the basis of sex, a hostile work environment, and retaliation for protected Title VII activity. Defendants are Sergeant Michael Colello and Captain Leonard Ditchkofsky of the Philadelphia Police Department and the City of Philadelphia.

In Count I -- filed under Title VII against the City of Philadelphia -- Rosati alleges that she was discriminated against on the basis of comments Sgt. Colello allegedly made about her children and pregnancy, Sgt. Colello's assignment of extra responsibilities to her, an investigation into an incident from May 2, 2012, and a work reassignment. Complaint at ¶ 49. Rosati alleges that she engaged in protected activity under Title VII by: reporting the May 2, 2012 incident, filing a formal complaint on May 30, 2012 with the Pennsylvania Human Relations Commission ("PHRC"), calling Internal Affairs on September 16, 2013, and filling out a complaint form on March 6, 2014 to add retaliation claims to her prior PHRC complaint. Id. at ¶ 51. Rosati alleges she was retaliated against by: being reassigned to One Squad on May 29, 2012, the destruction of her August 26, 2013 request for maternity leave, the return of her

restricted duty request to her for corrections in March of 2014, the receipt of a counseling form about not following the chain of command, and the inclusion of that counseling form in her 2013 performance evaluation. Id. at ¶ 52. In Count II -- filed under the PHRA against the City of Philadelphia, Sgt. Colello, and Capt. Ditchkofsky -- Rosati alleges the same misconduct, protected activity, and retaliation. Id. at ¶¶ 63-66.

Defendants moved for summary judgment, and Rosati opposes their motion.

## II.     Standard of Review

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted).  If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial. Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient).

Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249). However, a non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment. Celotex, 477 U.S. at 324.

## III.  Factual Background

Patricia Rosati has spent most of her career in the 8th Police District[1] in the City of Philadelphia since becoming a police officer in 1996. Joint Stip. at ¶¶ 20-21. After working as a patrol officer and then COMPSTAT officer, Rosati became a Crime Prevention Officer in 2011, a position she held for about two and a half years. Id. at ¶¶ 23-26. Capt. Ditchkofsky became the commanding officer at the 8th District in February of 2012. Id. at ¶¶ 2, 9. Sgt. Colello was the Administrative Sergeant in the 8th District from early 2008 through mid-2012. Id. at ¶¶ 10, 16-18.

From 2005 through 2014, Rosati took multiple leaves of absence under the Family Medical Leave Act and frequently worked on restricted duty largely as the result of pregnancy or

---

[1] The 8th District has five separate platoons: One, Two, Three, Five, and Seven. Joint Stip. at ¶ 50. One, Two, and Three Platoons each have three squads, and officers assigned to those squads perform mainly shift work. Id. at ¶ 51-52. Five and Seven Platoons are special assignments with many different shifts. Id. at ¶ 53.

pregnancy-related conditions. Id. at ¶¶ 27-49. The relevant period for this action began in February of 2012. We recount the facts from Rosati's perspective as the non-moving party.

In February of 2012, Rosati asked Sgt. Colello for permission to take a few hours off to attend a doctor's appointment, and Sgt. Colello responded by asking if she "was going to get fixed." Rosati Dep. at 102:9-12. Sgt. Colello made this comment in the 8th District's Operations Room with three or four people present, although Rosati is not sure who was there. Id. at 104:1-7. Rosati received the time off she requested. Id. at 109:21-24. Rosati told Lieutenant Sue Farley about the "get[ting] fixed" comment about a week after it happened. Id. at 111:14-112:1. Rosati did not tell anyone else about the comment and did not document it. Id. at 112:5-14. That same month, when Rosati told Sgt. Colello that she was pregnant, he asked if she "was keeping the baby." Id. at 102:20-22. Rosati believes this comment was made within the same week as the first comment. Id. at 108:2-4. Rosati also says Lt. Farley told her that Sgt. Colello "made comments on a weekly basis about" her shifts and childcare needs. Id. at 103:2-7. Rosati is not aware of any other specific comments made about her.[2]  Id. at 103:8-9.

On February 10, 2012, Rosati was placed on restricted duty because of pregnancy-related restrictions. Joint Stip. at ¶ 38. Three months later, on May 2, 2012, there was an incident between Rosati and Sgt. Colello in the kitchen attached to the 8th District's Operations Room. Id. at ¶ 54. Rosati walked into the 8th District's kitchen to announce that her daughter had received an award for student of the month. Rosati Dep. at 93:5-14. Sgt. Colello and Officer Bob Sweeney were both in the room, and Sgt. Colello said, "Let me guess. You need a day off." Id. at 93:13-16. Sgt. Colello called Rosati "a fucking scammer," id. at 93:22-24, and made nepotism-

---

[2] Sgt. Colello denied ever making these or similar comments. Colello Dep. at 115:16-22. For the purposes of summary judgment, defendants have conceded to Rosati's version of the facts to show that her claims fail as a matter of law. MSJ at 29.

related accusations. Id. at 93:23-94:3. Officer Sweeney left the room. Id. at 94:5-6. After the door was shut, Rosati asked Sgt. Colello if he had a problem with her. Id. at 94:11-13. Sgt. Colello said that once their current female lieutenant was replaced by a male lieutenant Rosati was "going to be fucked, because [she was] going [to] have four kids running around and [was] going to be pushing a car." Id. at 94:15-19. According to Rosati, "pushing a car" means an assignment to a line squad position rather than an administrative one. Id. at 100:2-3.[3]

After the incident, the parties agree that on May 25, 2012 Sgt. Colello requested that disciplinary action be taken against Rosati for insubordination. MSJ at ¶ 68; Pl. Resp. to Def. Facts at ¶ 68 (admitting those facts). Capt. Ditchkofsky never finished his investigation because Rosati "went out sick and never returned to the 8th District." MSJ at ¶ 74; Pl. Resp. to Def. Facts at ¶ 74 (admitting those facts). However, in February of 2013 Lieutenant Monaghan conducted several interviews of witnesses to the incident. See Pl. Resp. Ex. 17. There are no allegations regarding any consequences from this investigation.

Around the same time, Capt. Ditchkofsky did not grant Rosati's request to work one week a month on a night shift, but did permit another male officer to do so. Pl. Resp. at 14. According to Capt. Ditchkofsky, Rosati wanted to change her shift to include one week of night work because he had assigned Officer Rudy Muller, the Community Relations Officer, to that schedule. Ditchkofsky Dep. at 106:10-18. Capt. Ditchkofsky explained that the shifts -- which the City predetermined -- did not permit such a schedule for an officer in the Crime Prevention position. Id. at 106:23-107:9. Capt. Ditchkofsky thus did not permit Rosati to do night work

---

[3] Sgt. Colello has a different account of this interaction. In his account, he did not make the alleged comments about Rosati being a "scammer" or "pushing a car," and avers that Rosati became insubordinate. Again, for the purposes of demonstrating that Rosati's claims fail as a matter of law, defendants have conceded to her version of events.

shifts because of her position as a Crime Prevention Officer and because of her pregnancy-related work restrictions. Id. at 107:9-14. The schedule permitting one week of night work was designed for Community Relations Officers to permit them to attend community groups' meetings. Id. at 108:10-109:1.[4] Capt. Ditchkofsky further explained: "There's no one week of night work for a Crime Prevention officer. It's only steady day work. That's all the City allowed. And even if there was a week of night work, she couldn't have worked it because she wasn't allowed to go on the street. She was pregnant." Id. at 109:7-14. Capt. Ditchkofsky could not assign Rosati to night work because "part of her restrictions was she wasn't supposed to work shifts" other than day work. Id. at 111:8-112:4. Capt. Ditchkofsky explained that he knew Rosati wanted to work a week of night work to accommodate baby-sitting, but that he "didn't need her on night work. Her restrictions prevented her from working night work." Id. at 112:14-19.

During her time in the 8th District, Rosati states that Sgt. Colello assigned her, and none of the other members of her squad, all of whom were male, certain tasks that fell to him after one of the District's lieutenants became ill. Rosati Dep. at 333:7-23. Rosati says these assignments included fifteen monthly reports and four or five weekly reports. Id. at 335:5-11. Rosati says, based on working near the other officers and having conversations with them, that it was not possible that her fellow officers received assignments she was unaware of. Id. at 338:3-339:3. Rosati alleges this work should have been done by a supervisor, not a police officer. Id. at 339:7-11. Rosati alleges that Sgt. Colello passed all such assignments to her. Id. at 339:17-23.

---

[4] Corporal Deborah Haworth submitted an affidavit. MSJ Ex. 7. Corporal Haworth serves in the Research and Planning Unit, which develops shift schedules for different positions. Id. at ¶¶ 1-4. The affidavit included two shift schedules, designated for PCROs in the 2012 calendar year. MSJ Ex. 7 at 2-3. The schedule shows, consistent with Capt. Ditchkofsky's testimony, that Community Relations Officers had a schedule that included one week of night work per month. Id.

On May 29, 2012 Rosati was reassigned to One Platoon, but, due to her restricted duty status and pending maternity leave, she would continue to work in the Operations Room on the day shift, as she was already doing. Joint Stip. at ¶ 55.[5] After learning of this reassignment, she asked to speak with Capt. Ditchkofsky regarding "on-going problems" with Sgt. Colello. Id. at ¶ 56.

On May 30, 2012, Rosati filed a charge with the Pennsylvania Human Relations Commission. Joint Stip. at ¶ 58; Joint Ex. 19.

Rosati gave birth to her fourth child in August of 2012. Joint Stip. at ¶ 38. Several months later, on February 25, 2013, Rosati was placed on restricted duty because of pregnancy-related restrictions. Id. at ¶ 39. Rosati gave birth to her fifth child in August of 2013. Id. at ¶ 40.

On or about August 26, 2013, Rosati's husband submitted a maternity leave request on her behalf following the birth of their fifth child. Id. at ¶ 59. The request "became lost during the approval process." Id. at ¶ 60. Rosati filed a complaint with the Police Department's Internal Affairs Bureau alleging that Capt. Ditchkofsky deliberately threw out or destroyed the request in retaliation for filing the PHRC charge against Sgt. Colello. Id. at ¶ 61. The Internal Affairs Bureau investigated and did not sustain or substantiate that charge against Capt. Ditchkofsky. Id. at ¶ 62. Rosati's maternity leave was eventually approved. Rosati Dep. at 135:4-9.

---

[5] Rosati attached the Reassignment Memorandum. Pl. Resp. Ex. 15. The Memorandum, dated May 29, 2012, explained that she would be assigned to One Platoon effective May 30, 2012. Id. The Memorandum continued, "Due to your restricted duty status and pending maternity leave, you will continue to work Monday-Friday, 8A-4P, assigned to the operations room." Id. Rosati "feels the reassignment was discriminatory because since being assigned to the 8th District Ditchkofsky had not involuntarily reassigned any other officers in 5-squad." Pl. Statement Additional Facts at ¶ 102. Rosati also says she heard from other officers that some male officers were not reassigned after they had been accused of insubordination. Id. at ¶¶ 103-07.

On January 27, 2014, Rosati requested restricted duty status from February 10, 2014 until April 4, 2014 due to an ongoing medical condition, and on February 12, 2014 she was placed on restricted duty. Joint Stip. at ¶¶ 41-42.

Rosati filed a second complaint with the PHRC on March 5, 2014. Pl. Resp. at 5. While the record does not include this complaint, Rosati attached correspondence from the PHRC indicating that she filed paperwork with them on that date. Pl. Resp. Ex. 5.

On March 17, 2014 Rosati submitted a request, with a doctor's note, to extend her restricted duty status. Joint Stip. at ¶ 43; Joint Ex. 14. On March 29, 2014, Rosati's then-supervisor, Sergeant Thomas Sileo, directed Rosati to resubmit her request to correct certain deficiencies. Joint Stip. at ¶ 44; Joint Ex. 15. Sgt. Sileo's memorandum explained the proper procedures for requesting an extension of restricted duty status and instructed that Rosati's request was not approved because: (1) "Police Commissioner" was misspelled, (2) the subject line was not correctly designated, (3) the request did not include specifics such as her diagnosis, prognosis, and projected date of return to active duty, and (4) the physician's note was too vague regarding her specific restrictions and had other technical deficiencies. Joint Ex. 15 at ¶¶ 1-3. The memorandum also explained that Rosati had to resubmit the corrected request through the chain of command, which started with Sgt. Sileo. Id. at ¶ 3.

On March 31, 2014, Rosati submitted a corrected request and doctor's note. Joint Stip. at ¶ 45; Joint Ex. 16. That request was approved. Joint Stip. at ¶ 46. While on restricted duty from February of 2013 until September 5, 2014, Rosati was detailed to the Differential Police Response Unit. Id. at ¶¶ 46-47.

On April 3, 2014, Sgt. Sileo and Lieutenant Labrice issued Rosati a counseling form regarding her request to extend her restricted duty status, and Rosati stated in writing her

disagreement with it. Joint Stip. at ¶ 63. Sgt. Sileo issued the counseling form for "Not Following the Chain of Command." Joint Ex. 24. The form explained that despite Sgt. Sileo's prior conversations with Rosati and provision of forms explaining the procedure for submitting correspondence up the chain of command, Rosati circumvented the chain of command. Id. The counseling form advised Rosati that she was required to follow the chain of command and failure to do so in the future might subject her to discipline. Id.

 On April 16, 2014, Rosati was given a performance report for the 2013 calendar year, signed by Sgt. Sileo as "rater" and Lt. Labrice as "reviewing officer." Joint Stip. at ¶ 64; Joint Ex. 25. Her performance was rated as satisfactory, but her report included reference to the counseling form, and Rosati asked to discuss the report with the reviewing officer. Joint Stip. at ¶ 64. That same day, Rosati submitted a memorandum to the Commanding Officer of Northeast Police Division requesting a meeting to discuss her 2013 performance report. Id. at ¶ 65. On April 21, 2014, Rosati received a new performance report for the 2013 calendar year, this time signed by Sgt. Sileo as "rater" and Capt. Ditchkofsky as "reviewing officer," with her performance marked as satisfactory and the counseling form comments removed. Id. at ¶ 66; Joint Ex. 27.

As of September 8, 2014, Rosati has been detailed from the 8th District to the mobile communications unit, and as of November of 2014 was on restricted duty for pregnancy-related reasons. Joint Stip. at ¶¶ 48-49.

## IV.    Discussion

Defendants move for summary judgment alleging that Rosati has failed to exhaust her administrative remedies for conduct occurring after May 30, 2012, and arguing that even if she has exhausted her administrative remedies as to all claims, they are still entitled to summary

judgment because Rosati cannot establish a prima facie case for discrimination, hostile work environment, or retaliation. MSJ at 29.  As noted, Rosati opposes their motion.

### A.   Exhaustion of Administrative Remedies

Defendants argue that Rosati has failed to exhaust her administrative remedies for her claims under the PHRA that occurred after May 30, 2012. MSJ at 25. On May 30, 2012, plaintiff filed a formal complaint with the PHRC alleging that, as a result of discrimination on the basis of her sex and pregnancy, she had been subjected to harassment and forced transfer. Pl. Resp. Ex. 2. Plaintiff dual-filed this charge with the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶ 31. This charge was given two case numbers -- PHRC Case No. 201106020 and EEOC No. 17F-2012-61393. Pl. Resp. Ex. 2. Rosati received right-to-sue letters from the PHRC on May 30, 2013 and the EEOC on October 16, 2014. Pl. Resp. at 5 & Exs. 3, 13. The status of Rosati's March 5, 2014 complaint to the PHRC is unclear. Rosati filed suit on April 25, 2014.

"A victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." Waiters v. Parsons, 729 F.2d 233, 235 (3d Cir. 1984).

The status of Rosati's most recent PHRA complaint remains unclear. But since Rosati alleges a variety of intertwined discrimination and retaliation claims related to her work assignments and pregnancies, we will find that her post-May 20, 2012 claims fall within the scope of the prior complaint and consider the merits.

B.     **Discrimination**

Although Pennsylvania courts interpreting Pennsylvania law are not bound by federal

interpretations of parallel federal statutes, courts generally interpret the PHRA in accord with

Title VII. Kelly v. Drexel Univ., 94 F.3d 102, 104-05 (3d Cir. 1996); Gomez v. Allegheny

Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995). We will therefore conduct one

analysis under both Title VII and the PHRA.

A plaintiff alleging disparate treatment can prove her claim through either direct or

circumstantial evidence. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-101 (2003). We evaluate

those claims in accordance with the burden shifting analysis set out in McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1972), and its progeny. A plaintiff in a Title VII action bears the initial

burden of establishing a prima facie discrimination case, and, if the plaintiff succeeds, the burden

shifts to the defendant to articulate a legitimate, non-discriminatory reason for the complained-of

action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Should the

defendant carry that burden, the plaintiff then has the opportunity to prove by a preponderance of

the evidence that the legitimate reasons offered were pretextual. Id. at 253.  The existence of a

prima facie case of employment discrimination is a question of law for the court to decide.

Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

To establish a prima facie case of discrimination, a plaintiff must show that she (1)

belongs to a protected class, (2) was qualified for the position, (3) was subject to an adverse

employment action despite being qualified, and (4) her employer acted under circumstances

raising an inference of discriminatory action. Id. Though the McDonnell Douglas presumption

shifts the burden of production to the defendant, the ultimate burden of persuading the trier of

11

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

To survive summary judgment after an employer articulates a legitimate, non-discriminatory reason for its action, a plaintiff must point to direct or circumstantial evidence from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious, discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.2d 759, 764 (3d Cir. 1994)).

An adverse employment action is one that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001). "Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." Langley v. Merck & Co., Inc., 186 F. App'x 258, 260 (3d Cir. 2006) (non-precedential). But see Zelinski v. Pennsylvania State Police, 108 F. App'x 700, 705-06 (3d Cir. 2004) (non-precedential) (explaining that a transfer resulting in neither lost pay nor rank may sometimes constitute an adverse employment action if the new assignment was less desirable).

Unnecessary derogatory comments do not rise to the level of adverse employment actions. Middleton v. Deblasis, 844 F. Supp. 2d 556, 566 (E.D. Pa. 2011). Investigations, separate from any negative consequences that may result from them, do not generally constitute adverse employment actions. Henry v. City of Allentown, 2013 WL 6409307, *7 (E.D. Pa. Dec. 9, 2013) (Schmehl, J.); see also Boandl v. Geithner, 752 F. Supp. 2d 540, 564 (E.D. Pa. 2010) (finding that a referral for an investigation that resulted in no ramifications for the employee did not constitute an adverse employment action).

Because Rosati did not suffer any adverse employment actions, she cannot make a <u>prima facie</u> showing of discrimination on the basis of her sex or pregnancy.

Sgt. Colello's comments to Rosati in February of 2012 about whether she was "getting fixed" or "keeping the baby" are not adverse employment actions.  Gratuitous derogatory comments do not rise to the level of adverse employment actions, which are serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. <u>Cardenas</u>, 269 F.3d at 263; <u>Middleton</u>, 844 F. Supp. 2d at 566. As rehearsed, the existence of a <u>prima facie</u> case of employment discrimination is question of law for the court to decide. <u>Sarullo</u>, 352 F.3d at 797. These comments, and those made during the May 2, 2012 incident, are insufficient as a matter of law to state a <u>prima facie</u> case for employment discrimination.

Similarly, the investigation into the May 2, 2012 incident does not constitute an adverse employment action. There are no allegations of negative consequences from the investigation. Without negative consequences, the investigation alone is not an adverse employment action.

Sgt. Colello's assignment of extra responsibilities to Rosati was also not an adverse employment action. As stated, adverse employment actions are serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. There are no allegations that these assignments from Sgt. Colello materially altered the terms or conditions of Rosati's employment. Nor do Sgt. Colello's actions raise the inference of discrimination on the basis of sex. A plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment. <u>Celotex</u>, 477 U.S. at 324. Rosati's assertions that she alone received certain extra assignments from Sgt. Colello, and that he specifically assigned them to her because of her sex, are unsupported and conclusory. Beyond the pleadings, Rosati provides only her deposition testimony to support this claim, and her

deposition testimony relies on hearsay -- that is, what other police officers told her their work assignments were. While we view the evidence in the light most favorable to the non-movant, we are not required to take into account evidence that would not be admissible at trial.  See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 296-97 (3d Cir. 2014).

Capt. Ditchkofsky's refusal to permit Rosati to work one week of night work per month does not constitute an adverse employment action. Rosati's position as a Crime Prevention Officer did not entitle her to work on a schedule that is designated specifically for Community Relations Officers. Refusing to change her work schedule under those circumstances is not an adverse employment action -- Rosati's terms and conditions of employment remained the same after the refusal of the request. Even if, based on Capt. Ditchkofsky's discretion to alter certain scheduling, his refusal to change her schedule was an adverse employment action, the defendants have offered legitimate, non-discriminatory reasons for the action: Capt. Ditchkofsky did not need an additional officer for night work and Rosati's work restrictions precluded her from doing night work. Other than her unsupported opinion that Capt. Ditchkofsky could have changed her schedule if he wanted to, Rosati does not provide any evidence from which a reasonable juror could draw that conclusion, and we are not required to grant the non-moving party the benefit of unreasonable inferences. See GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 210-11 (3d Cir. 2001) (rejecting an unreasonable inference of motive in light of an alternative, reasonable inference from the same facts).

Nor was Rosati's reassignment to One Platoon an adverse employment action. Minor actions, such as lateral transfers and changes of title and reporting relationships, generally do not suffice to constitute adverse employment actions. After reassignment to One Platoon, Rosati remained on her prior schedule of Monday-Friday day work while on restricted duty. Her

14

reassignment to One Platoon is the type of lateral transfer or change of title and reporting relationship that generally does not constitute an adverse employment action.

Even taking the facts and inferences in the light most favorable to Rosati as the non-moving party, she has failed to meet her burden to show a prima facie case of discrimination on the basis of sex or pregnancy.

### C.     Hostile Work Environment

An employee may establish a Title VII violation by proving that discrimination based on sex has created a hostile or abusive work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). Title VII is violated if an employee is subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult…that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). The work environment must be objectively hostile or abusive, meaning a reasonable person would find it to be so. Id.

To prove a prima facie hostile work environment case, a plaintiff must show (1) intentional discrimination because of her sex, (2) regular and pervasive discrimination, (3) a detrimental effect, (4) that the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) respondeat superior liability. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). We must consider all the circumstances, including the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). Offhand comments and isolated incidents -- unless extremely serious -- do not rise to the level of

15

discriminatory changes in the terms and conditions of employment. Id. at 788. See also

Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863 (3d Cir. 1990) (explaining that

defendant's "two comments, however, are insufficient, in and of themselves, to support a hostile

environment claim. Hostile environment harassment claims must demonstrate a continuous

period of harassment, and two comments do not create an atmosphere.").

      Because the events and incidents in this case do not rise to the level of severe and

pervasive discrimination, but rather are in the nature of isolated incidents, Rosati cannot meet her

burden of showing a prima facie case of a hostile work environment.

      Rosati complains of three specific incidents: two comments in a one-week period in

February of 2012 from Sgt. Colello regarding whether she was "getting fixed" or "keeping her

baby" and the May 2, 2012 incident. Three incidents over a four month period is not a

continuous period of harassment, nor was any incident so serious as to create a hostile work

environment on its own. This conduct was infrequent -- Sgt. Colello and Rosati allegedly had

three such interactions over a fourth month period. The conduct was not severe -- Sgt. Colello's

comments, though offensive, were isolated. There are no allegations that Sgt. Colello's conduct

was physically threatening or humiliating. Rather, his conduct was precisely in the category of

mere offensive utterances. Nor are there allegations that Sgt. Colello's conduct unreasonably

interfered with Rosati's work performance. While Rosati says Lt. Farley told her that Sgt.

Colello made frequent comments about her children or family, Rosati offers this as hearsay

testimony, and did not herself hear them.

      Even viewing the evidence in the light most favorable to Rosati as the non-movant, she

has failed to make a prima facie showing of a hostile work environment.

D.    **Retaliation**

Title VII's substantive and anti-retaliation provisions are not coterminous, as the scope of the anti-retaliation provision extends beyond workplace- or employment-related retaliatory acts and harm. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). To prove a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) there was a causal connection between the protected activity and the employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). A plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse, meaning it would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern, 548 U.S. at 68 (distinguishing significant and trivial harms). A plaintiff must show that the unlawful retaliation would not have occurred absent the alleged wrongful action or actions of the employer. University of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013).

The timing of an alleged retaliatory action "must be unusually suggestive of retaliatory motive before a causal link will be inferred." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004). Days are suggestive; months are not. Id. (citing cases to demonstrate that two or ten days raised such an inference, but that two months did not). See also McLaughlin v. Fisher, 277 F. App'x 207, 218-19 (3d Cir. 2008) (non-precedential) (observing that two days is unusually suggestive, but three months is not). If there is no such proximity, we may also consider the intervening period for proof of actual antagonistic conduct or animus against the employee. Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007).

Because Rosati cannot demonstrate that the defendants took any adverse employment actions against her because of her engagement in protected activity under Title VII, she cannot meet her burden of showing a prima facie case for retaliation.

Rosati alleges she engaged in protected activity under Title VII by: filing a formal complaint on May 30, 2012 with the PHRC after the May 2, 2012 incident, calling Internal Affairs on September 16, 2013, and adding a retaliation claim to her PHRC complaint on March 5, 2014.

As discussed above, Capt. Ditchkofsky's refusal to allow Rosati, as a Crime Prevention Officer, to work on a schedule designated for Community Relations Officers was not an adverse employment action. Rosati's schedule and terms or conditions of employment did not change as a result of her denied request. Nor was Rosati's reassignment to One Platoon an adverse employment action. Again, she remained in her prior schedule of Monday-Friday day work while on restricted duty. Her reassignment to One Platoon is the type of lateral transfer or change of title and reporting relationship that generally does not suffice to constitute an adverse employment action, and there is no evidence that this assignment was less desirable than the one she had.

The misplaced August 26, 2013 maternity leave request is also not an adverse employment action, and there is not a scintilla of evidence that the request was intentionally misplaced in retaliation for any protected activity under Title VII. Rosati filed her complaint with the PHRC on May 30, 2012, but this paperwork incident did not occur until August 26, 2013 -- almost fifteen months later. Days are suggestive; months are not. See Williams, 380 F.3d at 760 (two months not suggestive). Nor has Rosati produced any facts to suggest an ongoing period of

18

hostilities between May 30, 2012 and August 26, 2013 such that we may infer causality between the two.

Rosati has produced no evidence to indicate that Capt. Ditchkofsky, or anyone else, intentionally mislaid her maternity leave request. A thorough investigation by the Internal Affairs Bureau, probing deeply into office norms for paperwork and Capt. Ditchkofsky's conduct, did not substantiate Rosati's claim that her paperwork was intentionally mislaid. While we are not bound by that finding, Rosati cites no evidence from which a reasonable juror could conclude otherwise. Burlington Northern contemplates a wider scope of conduct that may constitute retaliation, which might include the intentional destruction of properly submitted forms, but Rosati supplies no basis upon which a reasonable juror could find that her paperwork was intentionally lost or destroyed.

The return of Rosati's March 17, 2014 restricted duty request to her for corrections, her 2014 counseling form, and her performance review for 2013 are also not adverse employment actions. The parties' joint facts and stipulations demonstrate that Rosati's restricted duty request was returned to her due to many technical and substantive deficiencies, and once Rosati corrected them her request was promptly approved. No reasonable juror could find any facts to suggest otherwise.

Rosati's 2014 counseling form is not an adverse employment action. As we have explained, the Philadelphia Police Department "uses counseling forms as a tool for training employees and does not consider them to be disciplinary actions. Counseling forms are never placed in an employee's personnel file. Furthermore, they cannot result in any disciplinary action being taken against an employee such as a loss in pay, transfer, or suspension nor can they

influence an employee's eligibility for promotions or raises." <u>Torres v. Deblasis</u>, 959 F. Supp. 2d 772, 781 (E.D. Pa. 2013).

Rosati believes the counseling form was unwarranted based on other instructions she received from someone higher up in the chain of command. Pl. Statement of Additional Facts at ¶ 161. In fact, the counseling form was later removed from her file. Rosati Dep. 246:9-247:16. The later retraction of the counseling form does not impugn its motive or render it an adverse employment action. Rosati believes, contrary to the Philadelphia Police Department's official policy, that counseling memos are used more broadly. <u>Id.</u> at 285:16-24. But she provides no evidence to support this conclusory allegation. Further, nothing about the timing of the counseling form suggests it was issued in retaliation for protected Title VII activity.

Finally, Rosati's 2013 performance review, issued in 2014, was not an adverse employment action taken in retaliation for protected Title VII conduct. The performance review rated Rosati's work as satisfactory, but in its initial version referred to the 2014 counseling form, even though the underlying conduct took place after the 2013 calendar year. After Rosati disagreed with the review, all mention of the counseling form was removed, and the performance review was reissued. While a negative performance review could be an adverse employment action, Rosati must show that the unlawful retaliation would not have occurred absent the alleged wrongful action or actions of the employer. Rosati cannot make that showing on the basis of either temporal proximity or any other inference of causality. Rosati did not make her second PHRC complaint until March 5, 2014, and her initial performance review was issued on April 16, 2014, more than a month later.

**V.**      **Conclusion**

Rosati cannot meet the burden of showing a <u>prima</u> <u>facie</u> case of discrimination, hostile work environment, or retaliation. Even viewing the facts in the light most favorable to Rosati as the non-movant, her claims are insufficient as a matter of law. The defendants are therefore entitled to summary judgment. An appropriate Order follows.

BY THE COURT:


  _/s/ Stewart Dalzell, J.
Stewart Dalzell, J.